## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Amica Mutual Insurance Co., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-4365 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| Parker Tikson, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court in this insurance coverage case is defendant Parker Tikson's ("Tikson") motion to dismiss plaintiff Amica Mutual Insurance Co.'s ("Amica") complaint for lack of personal jurisdiction. Alternatively, Tikson asks the court to transfer this case to the Western District of Washington, where litigation stemming from the auto accident at issue in this case is pending. *See* Mot. to Dismiss 1, ECF No. 16; Fed. R. Civ. P. 12(b)(3).

### I.    Background

Amica alleges in its complaint that it is incorporated and headquartered in Rhode Island. *Compl.* ¶ 1, ECF No. 1. Tikson resides in, and is a citizen of, the State of Washington. *Id.* ¶ 2.

Coverage under the auto insurance policy at issue took effect on February 15, 2017, and lasted for one year. Resp. to Mot. to Dismiss Ex. A, ECF No. 19-1, PageID No. 128.[1] The policy listed Tikson's parents as the insureds and three additional authorized drivers, including plaintiff, identified in the policy as "a household driver." *See id.* at PageID No. 146. As discussed *infra*, Tikson moved to Washington State before the policy's effective date, taking with him the 2013 Subaru Outback at issue in this case. Nonetheless, the policy's declarations identified the "garaging location" of the 2013 Subaru Outback as "off street" at Tikson's parents' home address (at that time) in Belvidere, Illinois. *See id.* at PageID No. 148. An "Illinois office"

---

[1] ECF No. 19-1 consists of separately paginated exhibits. In this memorandum opinion and order, the court cites the exhibits according to the PageID Nos. assigned to them by the CM/ECF system.

issued the policy;[2] it contains Illinois endorsements; Illinois insurance cards were issued under it; and the policy included an "Information Digest for our Illinois Policyholders," as well as an Illinois Consumer Service Bulletin. *See id.* at PageID Nos. 130–135, 140, 168–171, 176–181, 186–190. There is no evidence nor any allegation in the complaint concerning the extent of Tikson's involvement in the procurement of the policy.

On October 29, 2017, Tikson was injured in an auto accident while driving the 2013 Subaru Outback in Washington. Compl. ¶ 18. He avers that the Outback was totaled, and he "suffered from a Mild Traumatic Brain Injury." Tikson Aff. ¶¶ 6–7, ECF No. 16-1. Tikson filed an underinsured motorist ("UIM") claim with Amica. Compl. ¶ 21.

Beginning in 2021, Amica and Tikson litigated various claims stemming from the 2017 accident in Washington state and federal courts. *See* Tikson Aff. ¶¶ 13–25; Reply 2–3, ECF No. 21. That litigation culminated in an arbitration proceeding held in Washington on February 27, 2023. *See* Tikson Aff. ¶¶ 15–16. The arbitrator ruled that Tikson's damages amounted to $468,006.40. Compl. ¶¶ 23–24. Amica subsequently paid Tikson $195,000. *Id.* ¶ 25. That figure represented the policy's alleged UIM coverage limit of $250,000 minus amounts that Amica had previously paid Tikson. *See id*.

Amica filed its complaint commencing this case on July 7, 2023. ECF No. 1. According to the complaint, Tikson has demanded that Amica pay him an additional $250,000 in damages. *Id.* ¶ 26. Invoking federal diversity jurisdiction conferred by 28 U.S.C. § 1332(a), Amica seeks a judgment declaring that Amica has satisfied its obligations under the policy. *See* Compl. ¶¶ 4, 27–33. Tikson moves to dismiss this case for lack of personal jurisdiction or, alternatively, to transfer it to the Western District of Washington.

---

[2] Amica does not explain what it means when it represents that "the policy was issued by an Illinois office." Resp. to Mot. to Dismiss 2. Amica may be referring to the declarations which list a Lisle, Illinois address as associated with "policyholder service." *See* Policy at 1, Resp. to Mot. to Dismiss Ex. A at 10. The import, if any, of the "policyholder service" address has not been explained by the parties, so the court gives no weight to it.

Approximately two months after Amica commenced this case, Tikson filed suit against Amica in the United States District Court for the Western District of Washington ("Washington case"). Tikson Aff. ¶ 26 (case filed Sept. 19, 2023). Tikson brought claims under Washington law, the resolution of which will require the Washington court to answer the question raised in Amica's complaint in this case: whether Amica owes him an additional $250,000 under the policy. *See* Compl. ¶¶ 5.4–5.5, No. 2:23-cv-1464-TL (W.D. Wash. Sept. 19, 2023), ECF No. 1. Amica moved to dismiss the complaint in the Washington case or to transfer the case to this court. On April 8, 2024, the judge presiding over the Washington case stayed it pending this court's decision on the instant motion to dismiss and to transfer. *Tikson v. Amica Mut. Ins. Co.*, No. 2:23-cv-1464-TL, order at 11, (W.D. Wash. Apr. 8, 2024), ECF No. 18.

Among other exhibits, Tikson attached his affidavit to his pending motion to dismiss. ECF No. 16-1. He avers in part:

> 4.      I am a Product Manager employed by Amazon, whose principal place of business is located in Seattle, Washington. I have been continuously employed by Amazon since 2016.

> 5.      My bank account is in Washington, my mailing address is in Washington, my medical care providers are in Washington, and I have paid taxes to the State of Washington every year since 2016.

> * * * *

> 9.      Since the time of the accident, all of my communications with Amica have been through my Washington-based attorneys, who represented me in a personal injury lawsuit in Washington against Amica and are currently representing me in a lawsuit against Amica for bad faith denial of insurance coverage in the matter captioned, *Parker Tikson v. Amica Mutual Insurance Company*, Case No. 2:23-cv-01464 DWC.

> 10.     When I left Illinois in 2016 to move to Washington, I drove the Subaru. I used the Subaru exclusively in Washington and never returned with that automobile to the State of Illinois at any time before it was totaled.

> 11.     I do not own property in Illinois, have no mailing address in Illinois, have no bank accounts in Illinois, and do not pay taxes to the State of Illinois. I do not conduct any business in Illinois.

> 12.     Since I moved to Washington, I have traveled back to Illinois on only a few, sporadic occasions. From 2016 to 2017 I went back there two or times a year (sic). From 2018 to 2022 I went back to Illinois one time a year. My parents moved to Tennessee in 2021 and I only went back to Illinois in 2022 to attend a funeral. I

have not been back to Illinois in 2023 and have no plans on visiting this year or in the future.

Tikson Aff. ¶¶ 4–5, 9–12

Tikson does not contest Amica's representation that before the October 2017 accident, no one reported his 2016 move to Washington or the change of the Subaru's garage address to Amica. *See id.* at ¶ 5. Amica therefore assigned an Illinois claims adjuster to investigate Tikson's claim. *See* Yurkovich Aff. Ex. D ¶¶ 1–3, ECF No. 19-4.

## II.    Personal Jurisdiction

Tikson moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). If no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make only a *prima facie* case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). At this procedural stage, the court must resolve any factual disputes in the plaintiff's favor. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

Illinois' Long Arm statute extends personal jurisdiction over out-of-state litigants to the limits set by the Fourteenth Amendment's Due Process Clause and by the Illinois Constitution. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590–91 (7th Cir. 2021) (citing 735 Ill. Comp. Stat. § 5/2-209(c); other citations omitted). The court therefore "proceed[s] with a federal due process analysis." *Id.* at 590 (citing *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 393 (7th Cir. 2020)). The federal Due Process Clause authorizes courts to exercise personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be such that it could "reasonably

anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Amica makes no argument in support of general jurisdiction, so the court analyzes specific, case-linked jurisdiction. *See Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860–61 (7th Cir. 2024) (*per curiam*).

"For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* at 861 (citing *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); other citation omitted). Amica does not dispute that Tikson moved to Washington before his 2017 accident. *See* Resp. to Mot. to Dismiss 4–5. It also does not argue that Tikson's post-accident contacts with Illinois, such as visiting his parents, create specific personal jurisdiction. *See id.* Amica's theory is that after he moved to Washington "Tikson purposefully directed insurance procurement at Illinois and purposefully obtained an Illinois policy, without providing accurate information to Amica about his and his vehicle's location . . . . His failure to inform Amica of his move and vehicle location prior to policy inception shows that he anticipated being subject to Illinois jurisdiction." *Id.* at 5.

Regarding procurement of the insurance policy at issue, Tikson's and his parents' contacts must be separated. Tikson's parents procured the policy in February 2017. Drawing inferences in Amica's favor, it is reasonable to believe that Tikson knew that his parents listed him as an additional driver, thereby saving him the cost of buying insurance for himself.

Knowledge of another's contacts with the forum state does not ordinarily suffice to establish personal jurisdiction because as a general rule, "each defendant's contacts with the forum State must be assessed individually." *Sanofi-Synthelabo, S.A.*, 338 F.3d at 784 (brackets and quotations omitted). When analyzing specific personal jurisdiction, "the unilateral activity of parties other than the non-resident defendant cannot satisfy the requirement of the defendant's contacts with the forum." *Id.* (brackets and quotation omitted).

Amica cites no authority or legal doctrine that would cause Tikson's parents' Illinois contacts to be imputed to him. *See* Resp. to Mot. to Dismiss 4–6. One possibility is that the legal theory Tikson is using to enforce the policy supports imputation. Although the parties do not discuss the theory by which Tikson seeks to recover under his parents' insurance contract, he appears to be proceeding on the theory that he is an intended third-party beneficiary. "In Illinois, a third party who is a direct beneficiary of an insurance contract has standing to enforce the obligations intended for his benefit under the contract" of insurance. *Garcia v. Lovellette*, 639 N.E.2d 935, 940 (Ill. App. Ct. 2d Dist. 1994) (citing *Sosin v. Hayes*, 630 N.E.2d 969 (Ill. App. Ct. 1st Dist. 1994); other citation omitted). Assuming Tikson contends that he is a third-party intended beneficiary of his parents' policy, "the contacts of a contracting party," such as Tikson's parents, "are not imputed to an assignee or third-party beneficiary," such as Tikson, "under a minimum contacts analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 543 (5th Cir. 2019) (quotation omitted). Thus, specific personal jurisdiction in this case must be predicated on Tikson's, not his parents', Illinois contacts, so his parents' procurement of an Illinois insurance policy does not support exercising personal jurisdiction in Illinois. *See North v. Ubiquity, Inc.*, 72 F.4th 221, 226 (7th Cir. 2023).

Amica attributes one additional alleged Illinois contact to Tikson: his "failure to inform" Amica of his move to Washington before the policy took effect in February 2017. Resp. to Mot. to Dismiss 5. For the court to have case-linked specific personal jurisdiction, "the plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262

(2017); other citation omitted). To assess case-linked personal jurisdiction, the court asks how Tikson's alleged contact—his non-disclosure of his move—relates to or affects Amica's claim in this case. *See id.* As pleaded by Amica, this case stems from an arbitration that occurred in Washington state; whether the policy covers Tikson's auto accident is not at issue. Amica asks this court to decide how much it must pay Tikson under the arbitrator's decision and the policy. *See* Compl. 8. Amica has not explained how this claim relates to Tikson's failure to disclose his move. Amica does not argue that Tikson's non-disclosure affected the arbitration or has any bearing on the present dispute over how much Tikson should receive. *See* Mot. to Dismiss 4–6. Neither does Amica allege that Tikson committed a tort by failing to disclose his move. *See id*. at 4–5.[3] Accordingly, Amica has not carried its burden to make a *prima facie* showing that its claim arises out of or relates to Tikson's purposeful Illinois contacts. *Cf. RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1285–86 (7th Cir. 1997); *Richardson v. Se. Conference*, 612 F.Supp.3d 753, 763 (N.D. Ill. 2020).

The courts in the two cases Amica cites found personal jurisdiction on materially different facts. *See* Resp. to Mot. to Dismiss 4–6. Amica first cites *Oregon Mutual Insurance Co. v. Barkley*, 2019 WL 3891621 (W.D. Wash. Aug. 19, 2019). The insured person in *Barkley* lived with her parents when they procured a policy covering people in their household. *Id.* at *2. She later moved to Georgia, and while there, filed an insurance claim in which she sought to be treated at the time of the claim as a member of her parents' household. *See id.* The court ruled that the insured could not "have her cake and eat it too. By submitting a claim for coverage under the Policy and identifying herself as a 'resident' of her parents' household in Washington, Ms. Barkley purposefully availed herself of the benefits and laws of this state." *Id.* In contrast, nothing in the record of the case at bar suggests, and Amica does not argue, that Tikson reached out to Illinois and claimed to be a member of his parents' Illinois household.

---

[3] Nor does Amica allege that its policy required notification of changes of address.

Amica also discusses *Economy Preferred Insurance Company v. Lamb*, 2022 WL 1556115, at *1–2 (N.D. Ill. May 17, 2022). *Economy Preferred* arose out of a November 2020 motorcycle accident in Arizona in which one of the insureds, John Lamb, was injured. *Id.* at *2. John Lamb filed an underinsured motorist claim, and his wife, Dena, filed a claim for loss of consortium. *Id*. Their insurer denied their claims and sued them in Illinois state court seeking a declaration that it correctly denied their claims. *See id*. The Lambs removed the case to this federal court and moved to dismiss for lack of personal jurisdiction. *Id*. The record showed that the Lambs had purchased the insurance policy at issue from an Illinois agent in 2016, that the Lambs had two homes, one in Illinois and one in Arizona; that they communicated to their insurance agent their intent to move to the Arizona home beginning in 2019, that Jon and Dena had taken steps, such as obtaining new driver's licenses, to change their domicile to Arizona by July 2020, and that John told his insurance agent that his motorcycle would be moved to Arizona by August 2020 (which was done). *See id*. It does not appear that the Lambs had sold their Illinois home by November 2020, when John Lamb was injured. *See Economy Preferred*, 2022 WL 1556115 at *1–2. The Lambs did not inform their insurance agent that the motorcycle was principally garaged in Arizona, and the policy when last renewed was priced based on their Illinois residence. *See id*. at *1.

Applying the Rule 12(b)(2) standard, the court held that it had personal jurisdiction over the Lambs. *Id.* at *4–5. Initially, the court recognized that "an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts." *Id.* at *4 (citing *Rudzewicz*, 471 U.S. at 478). The court nonetheless concluded that the following facts showed purposeful availment on the Lambs' part: "Defendants intentionally used an Illinois insurance agent to procure the Policy Package, the Auto Policy has Illinois endorsements, the Homeowners Policy (which is included in the Policy Package) insures an Illinois residence, and the Declarations page of the Auto Policy lists the vehicle as located in 'Territory 04'" which appears to have indicated that the motorcycle was principally garaged in Illinois. *Id.* (citing *Eastern Concrete Materials, Inc. v. ACE Am. Ins. Co.,* 948 F.3d 289, 298 (5th Cir. 2020)). The

court also determined that hailing the Lambs into an Illinois forum comported with traditional notions of fair play and substantial justice. *See id.* at \*5.

Unlike the Lambs, Tikson did not procure an insurance policy for himself (his parents did), he did not live in Illinois when his parents obtained the policy in or around February 2017; and the policy in this suit is an auto policy rather than a package including insurance of an Illinois home. Amica cites no case finding personal jurisdiction on comparable facts. Based on the foregoing analysis, Amica's claim must be dismissed for lack of personal jurisdiction.

### III.    Venue

The parties have extensively briefed whether the court should exercise its discretion to transfer this case to the Western District of Washington under 28 U.S.C. § 1404. They make these arguments in the alternative in the event that this court determines that it has personal jurisdiction over Tikson. *E.g.*, Mot. to Dismiss 7. Under 28 U.S.C. § 1631, when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other [ ] court . . . in which the action or appeal could have been brought at the time it was filed or noticed." *North*, 72 F.4th at 226. The term "jurisdiction" in § 1631 "includes both subject matter and personal jurisdiction." *Id.* at 227.

The Seventh Circuit recently held that "when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case—even if neither party requests transfer." *Id.* at 228 (quotation on p. 228).

The parties agree that this case could have been filed in the Western District of Washington, where they have been litigating for years. Their interest of justice arguments focus on matters such as the convenience of witnesses and the relative congestion of the two courts' dockets. These arguments presuppose that both courts have personal jurisdiction. Since that presumption has proven incorrect, the parties will be given an opportunity to tell the court whether this case should be dismissed without prejudice for want of personal jurisdiction or transferred under § 1631 to the Western District of Washington.

**IV.    Conclusion**

For the reasons stated, defendant Parker Tikson's motion to dismiss for lack of personal jurisdiction is granted.  The parties have seven days (until and including October 2, 2024) to tell the court whether this case should be dismissed without prejudice or transferred under 28 U.S.C. § 1631 to the Western District of Washington.

Dated September 25, 2024                                      /s/ Joan B. Gottschall_____
                                                                              United States District Judge